GIBBONS, J., delivered the opinion of the court, in which GUY, J., joined. KEITH, J. (pp. 966-73), delivered a separate dissenting opinion.
OPINION
JULIA SMITH GIBBONS, Circuit Judge.
Jackie Ray King pled guilty to armed robbery and bank robbery. He was on parole for a prior offense. As part of the plea agreement, the state of Michigan agreed that consecutive sentencing would not apply. Pursuant to the plea agreement, the state trial court imposed concurrent sentences for the armed robbery and bank robbery convictions. The state court, as required by Michigan law, imposed those sentences consecutive to King’s parole sentence. King sought to withdraw his plea, arguing only that under Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and its progeny, the prosecutor impermissibly reneged on the plea deal by failing to abide by his promise of leniency. The state trial court dismissed this argument, finding that the prosecutor never promised something that was not within his power — having the parole sentence run concurrent to the newly-imposed sentences.
After unsuccessfully attempting to appeal the state trial court’s ruling, King sought habeas relief in the Western District of Michigan presenting the same claim. The district court denied the claim, holding the state court’s determination that there was no breach of King’s plea agreement was not objectively unreasonable. We granted King a certificate of appealability. The certificate, however, raised for King an entirely new claim: whether his plea was knowingly and voluntarily entered under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We affirm the district court’s denial of his petition for a writ of habeas corpus because, with respect to this new claim, King failed to exhaust state remedies.
I.
King was on parole for a prior felony when he was arrested and subsequently charged with one count of bank robbery and one count of armed robbery in Gene-see County, Michigan, Circuit Court. King agreed to a plea bargain in connection with the bank robbery and armed robbery charges, part of which entailed that his sentences would run concurrently. The written plea agreement contained a line labeled “Consecutive Sentencing.” There was a dash (“ — ”) next to that line, indicating that consecutive sentencing would not apply. Two weeks later, the prosecutor (a different prosecutor than the one who negotiated the plea deal) read the plea into the record. The prosecutor explained: “Consecutive sentencing does not apply.” The judge engaged King in a plea colloquy and accepted his plea. Bank robbery and armed robbery are punishable by imprisonment for life or any term of years. Mich. Comp. Laws §§ 750.529, .531. The trial court sentenced King to fifteen to twenty-five years’ imprisonment for the *963 armed robbery and a concurrent ten to twenty years’ imprisonment for the bank robbery.
This case arises from the intérplay between these sentences and the sentence for which King was on parole. Under Michigan’s system of indeterminate sentencing, many crimes result in a minimum and a maximum sentence. The maximum is often statutorily prescribed, while the minimum is determined according to Michigan’s sentencing guidelines. Mich. Comp. Laws § 769.34(2), (3). Once a prisoner has served the minimum sentence, the parole board has jurisdiction to release the prisoner. Mich. Comp. Laws § 791.234(1), (2). However, a prisoner is deemed to be serving the sentence imposed by the trial court until parole is successfully completed. See Arkin Distrib. Co. v. Jones, 288 Mich.App. 185, 792 N.W.2d 772, 775 (2010).
Under Michigan law, sentences for felonies committed while on parole must run consecutive to the earlier paroled sentence. Mich. Comp. Laws § 768.7a(2). The first date on which the defendant is eligible for parole is determined by combining the minimum consecutive sentences. Mich. Comp. Laws § 791.234(4). The defendant is released upon serving the total of the consecutive maximum sentences unless the parole board determines that the defendant is eligible for parole. Id. Pursuant to these requirements, King’s newly-imposed sentences, while concurrent with each other, were to run consecutive to his sentence for the paroled sentence. Because there was no minimum sentence remaining on King’s paroled sentence, the parole board set King’s first possible parole date at December 4, 2021, fifteen years from the date that he was sentenced to a fifteen-year minimum for armed robbery. The paroled sentence significantly increased the overall time in prison which King faced: Because the maximum sentences were added together, King’s maximum sentence was increased by thirty-one years, giving him a maximum possible release date of 2062.
King moved to withdraw his plea. The sole basis for this motion was that “[t]he concurrent sentence agreement was an unfulfilled promise of leniency which has rendered the plea involuntary.” King’s motion to withdraw stated:
Where there has been an unkept promise by the prosecution, Santobello v. New York, [404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ], requires plea withdrawal or specific performance. Defendant asserts that his plea was induced by what he understood to be a promise of leniency that went unfulfilled. The plea record reflects that the unfulfilled promise of leniency was clearly stated. The plea record, as well as the written plea agreement, support his claim that the promise of leniency was an inducement to plead guilty and was therefore a. part of the plea agreement. Giving Defendant no credit for time served and running his sentence consecutive to his parole violation is a breach of that promise.-,
King supported his motion with a brief and his own affidavit which stated as his only basis for relief that “[t]he concurrent sentence agreement was an unfulfilled promise of leniency which was one of the bases of my plea.”
The trial court rejected King’s claim without conducting an evidentiary hearing. After considering arguments by King’s counsel and by the prosecution, the trial court concluded:
The Court believes the record and the plea sheet indicate that a fair interpretation is that the armed robbery and the bank robbery would be concurrent with each other and there would be no ability to bargain for a sentence concurrent to *964 the parole sentence. It’s something the Court couldn’t do even if it wanted to and the Court sees no reference to that nor would there be any reference because it would be common knowledge that that sentence would have to be consecutive to the parole sentence.
In short, the trial court found that there was no promise of leniency with respect to the paroled sentence.
King sought leave to appeal to the Michigan Court of Appeals and the Michigan Supreme Court, both of which denied his application. King then turned to the federal courts, seeking habeas relief in the United States District Court for the Western District of Michigan. On his habeas form, King indicated that the ground raised in his appeals to the Michigan Court of Appeals and Michigan Supreme Court was an “[unfulfilled promise of leniency by the prosecution which rendered [his] plea involuntary.” In his objection to the magistrate judge’s report and recommendation rejecting his claim, King repeated that refrain. The district court adopted the magistrate judge’s report and recommendation, holding that whatever King subjectively believed the plea agreement embodied, the prosecution did not breach the plea agreement. The district court denied King a certificate of appeala-bility.
Our certificate of appealability posed the question as follows, giving rise to a new and unexplored issue on appeal:
Did petitioner King fail to understand that he would be sentenced to serve a previous sentence because of his parole violation and that his two robbery sentences would be consecutive to his previous sentence, and, if so, was petitioner King’s sentence, therefore, imposed in violation of Boykin v. Alabama, 395 U.S. 288 [89 S.Ct. 1709, 23 L.Ed.2d 274] (1969)?
Zealously assisted by counsel we appointed after creating this issue, King understandably seizes on the language in the certificate and the state court’s reference to “common knowledge” to contend that the state court applied an incorrect legal standard when it failed to consider King’s subjective belief about whether his parole sentence would be consecutive or concurrent to his newly-imposed sentences. Completing the metamorphosis, King argues that his plea was involuntary because he did not understand the consequences of his plea.
II.
Before we consider Boykin, we must assure ourselves of our own ability to review King’s claim. 28 U.S.C. § 2254(b) requires that a petitioner for habeas relief exhaust available state remedies on a particular claim before proceeding to federal court. This exhaustion requirement, long settled, see Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), serves important federalism interests by permitting state courts the first opportunity to correct alleged violations of their prisoner’s rights, see Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). “[B]cause of the important federal-state comity concerns served by the exhaustion doctrine, a state prisoner is required to present the state courts with the same claim, or a claim ‘substantially equivalent’ to the claim, urged upon the federal courts.” Jalowiec v. Bradshaw, 657 F.3d 293, 304 (6th Cir.2011) (quoting Picard, 404 U.S. at 275-78, 92 S.Ct. 509). “Otherwise, the state courts are not given the opportunity to apply the controlling legal principles to the facts bearing on the constitutional claim.” Id.
The only claim presented by King to the Michigan courts was the claim that *965 the prosecutor breached the plea agreement by failing to fulfill a promise of leniency. In presenting this claim, King called upon the Michigan courts to apply Santobello, 404 U.S. 257, 92 S.Ct. 495. Under Santobello, the Michigan courts appropriately assessed what promises were made in the plea bargain and whether those promises were kept. The question under Boykin is different: whether the record demonstrates that the defendant’s plea was entered into knowingly, intelligently, and voluntarily. 395 U.S. at 242-44, 89 S.Ct. 1709. There can be no dispute that Santobello and Boykin impose different requirements and that a claim brought under one is not also brought under the other. See Bordenkircher v. Hayes, 434 U.S. 357, 362, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).[1]
The record here bears this out. Before the state trial court, King supported his claim with an affidavit, which in cursory fashion said, “[t]he concurrent sentence agreement was an unfulfilled promise of leniency which was one of the bases of my plea.” At no time did King assert that he had been made any promise apart from the prosecutor’s accurate statement at the change-of-plea hearing for his bank robbery and armed robbery charges that consecutive sentences would not apply, a statement affirmed by the written plea agreement notation filed in the state trial court record. King did indeed receive concurrent sentences for bank robbery and armed robbery. But as Michigan law required, these sentences were consecutive to the prior paroled sentence.'
The state trial judge made a factual determination that no false or unfulfilled promise had been made, a result supported by the accuracy of the prosecutor’s representation with respect to the offenses that were the subject of the agreement and the plea proceeding. Hence, the state trial judge found that “the record and the plea sheet indicate that a fair interpretation is that the armed robbery and the bank robbery would run concurrent with each other and there would be no ability to bargain for a sentence concurrent to the parole sentence.” This reading of the record and the plea sheet was bolstered by the fact that it was “common knowledge that the sentence would have to be consecutive to the parole sentence.”
Nowhere did King present his Boykin claim to the Michigan courts. While it is true that King cited in his brief to the appropriate language — “A guilty plea is not constitutionally valid unless entered in a voluntary, knowing, and intelligent manner” — these citations merely cast in relief his argument that “an involuntary plea results from an unkept promise.” The record is replete with the latter argument but bereft of a claim based on the former. King’s citation of cases that deal with general voluntariness requirements cannot convert his argument into one based on Boykin, where the narrative portion of his brief in support of his motion to withdraw his plea, his counsel’s statements at the hearing on the motion, and King’s own affidavit clearly state that his claim is one of an unfulfilled promise of leniency, not a more general claim of involuntariness.
King contends that Michigan’s exhaustion argument is itself procedurally barred. The state, King contends, intentionally waived the exhaustion defense in the district court because it stated in its answer, “Petitioner’s claim was exhausted during *966 his direct appeal through the State courts.” See Luedtke v. Berkebile, 704 F.3d 465, 466 (6th Cir.2013). It should be obvious, however, that the state of Michigan did not waive a defense to a claim that was never presented. The claim to which the state’s answer referred was that “[t]he trial court abused its discretion in denying my motion to withdraw my plea where the record itself reflects an unfulfilled promise of leniency by the prosecutor which rendered my plea involuntary and where specific performance cannot be imposed.” The state, unaware that we would create a new claim for King, did not waive its exhaustion defense to the as-yet-nonexistent claim.
We find no compelling reason to review King’s claim notwithstanding his failure to exhaust. See Granberry v. Greer, 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). Accordingly, we do not reach the merits of his Boykin claim or determine whether King would have been entitled to relief under 28 U.S.C. § 2254(d)(1) or (2).
III.
We affirm the district court’s denial of King’s writ of habeas corpus because King has not exhausted his state court remedies.

. The dissent’s reasoning collides with this principle. Carried to its logical conclusion, the analysis of the dissent would require the state court to conduct a Boykin inquiry when only a Santobello claim is made. Thus, every failed Santobello claim would be a basis for habeas relief because the state court did not treat it as something it was not.