RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0014p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

―――――――――

RONALD KELLY,

>*Petitioner-Appellant,*

*v.*

No. 15-3950

ALAN J. LAZAROFF, Warden,

>*Respondent-Appellee.*

―――――――――

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:14-cv-01217—John R. Adams, District Judge.

Argued:  December 9, 2016

Decided and Filed:  January 20, 2017

Before:  COLE, Chief Judge; BOGGS, and SILER, Circuit Judges.

―――――――――

## COUNSEL

―――――――――

**ARGUED:**  Russell S. Bensing, Cleveland, Ohio, for Appellant.  Stephanie L. Watson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Russell S. Bensing, Cleveland, Ohio, for Appellant.  Stephanie L. Watson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

―――――――――

## OPINION

―――――――――

BOGGS, Circuit Judge.  This is a procedurally complicated habeas case involving two "layered" claims of ineffective assistance of counsel.  In 2010, Ronald Kelly was convicted of felony murder, felonious assault, and assault in Ohio state court for his involvement in a fight

near Kent State University and was sentenced to a term of fifteen years to life imprisonment. After his conviction, Kelly raised several claims on direct appeal, including a claim that his trial counsel was ineffective. In a dramatic twist, however, Kelly's counsel on direct appeal included the wife and business partner of his trial counsel.[1] Perhaps unsurprisingly, Kelly's direct appeal and state post-conviction claims before the Ohio state courts were unsuccessful. Armed with new counsel, Kelly brought a new claim of ineffective assistance of trial counsel in a 28 U.S.C. § 2254 habeas petition in federal court, advancing a theory of his trial counsel's ineffectiveness that had not been fully presented before the Ohio state courts. Kelly also argued that his appellate counsel was constitutionally ineffective, a claim that *had* been properly presented before the Ohio state courts, and that his appellate counsel's ineffectiveness should excuse his procedurally defaulted ineffective-assistance-of-trial-counsel claim under the Supreme Court's decisions in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). The district court rejected both of his arguments, concluding that the actions of Kelly's appellate counsel, even if allegedly ineffective, could not excuse Kelly's procedurally defaulted ineffective-assistance-of-trial-counsel claim, and that his ineffective-assistance-of-appellate-counsel claim could not overcome AEDPA deference.[2] We affirm.

I

A

In the fall of 2009, Ronald Kelly was a sophomore at Akron University. On November 14, 2009, Kelly and two of his friends, Adrian Barker and Glenn Jefferson, attended a fraternity party at nearby Kent State University. The events of that evening are best laid out by the Ohio appellate court that later affirmed Kelly's conviction:

> On the early morning of November 15, 2009, [Kelly] left a fraternity party at Kent State University at around 2:00 a.m. with his friends, Adrian Barker and Glenn Jefferson. The trio got into Jefferson's white Honda Civic. At approximately the same time, four Kent State students—Christopher Kernich, Bradley Chelko, Dave

---

[1]Because the record is somewhat ambiguous on this point, we will assume that Gregory and Margaret Robey divided the responsibilities of Kelly's representation on direct appeal and refer to them with the plural form of counsel.

[2]"AEDPA" refers to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

Clements, and Christopher Pataky—were on their way home after an evening of drinking and socializing. As Jefferson's car was beginning to exit the lot, Kernich, Chelko, Clements, and Pataky were passing the parking lot on foot. Testimony indicated that Jefferson's Honda left the lot quickly and nearly hit one of the walkers as it exited. The near-miss prompted a member of the group to shout some "unfriendly" words at the car as it pulled out onto the street. As a result of the group's exclamation, Jefferson pulled the car over and parked in a lot further up the street.

In the meantime, Kernich, Chelko, Clements, and Pataky continued walking in the direction of the parked vehicle. As the group passed Jefferson's parked car, [Kelly] and Barker exited the vehicle. [Kelly] shoved Chelko into the Honda's rear bumper then punched him in the face, knocking him to the ground.

The state presented multiple witnesses who testified that, after [Kelly] knocked Chelko down, he then "squared off" with Kernich. As [Kelly] and Kernich "danced" in the street, each in a fighting posture, there was testimony that Barker, running at a full sprint, blindsided Kernich with a punch to the head. It appeared Kernich collapsed to the ground unconscious, cracking his head on the pavement. Witnesses testified that [Kelly] and Barker then commenced kicking and stomping the defenseless Kernich in the head. Kernich passed away as a result of injuries he sustained from the attack.

Conversely, [Kelly] testified that he and Chelko were brawling in the street, with Chelko making continued efforts to tackle him. Once the fight with Chelko ended, [Kelly] testified he turned around only to find Kernich on the ground, the apparent victim of Barker's fury. [Kelly] asked Barker why he stomped Kernich, to which Barker did not respond. [Kelly] testified he never stomped or kicked Kernich.

After the dire consequences of the attacks became clear, Jefferson went to retrieve his vehicle and ripped off its temporary tags to avoid identification. Jefferson picked up [Kelly] and the duo drove to where Barker was situated, surrounded by concerned civilians attempting to detain him. [Kelly] exited the vehicle in an effort to reason with the angry crowd and collect his friend. Very quickly thereafter, the police arrived and bystanders pointed out [Kelly] and Barker, who were detained and eventually arrested. Kernich was quickly transported to the trauma center at Akron City Hospital where, several days later, he was pronounced dead.

*State v. Kelly*, 2012 WL 439668, at *1 (Ohio Ct. App. Feb. 13, 2012). As a result of these events, Kelly and Barker were both indicted on charges of felonious assault and murder. Specifically, Kelly was charged with one count of felonious assault, two counts of murder (one alleging that Kelly had murdered Kernich purposefully, and one alleging that Kelly had killed

Kernich during the commission of a felony), and three counts of misdemeanor assault for his attack on Kernich's friends who were involved in the fight.

At trial, Kelly was represented by Gregory Robey, who pursued what Kelly now calls an "all-or-nothing" trial strategy. Under this approach, Kelly took the stand and testified that, despite eyewitness testimony to the contrary,[3] he had never touched Kernich during the group altercation. Instead, he insisted that although he had "square[d] up" in a fighting stance against Kernich, Kelly had become distracted by one of Kernich's friends and that Barker had been the one to deliver the fatal blow and kick Kernich's unconscious body. Robey also had an expert witness testify that there was no trace of Kernich's DNA on Kelly's shoes, and ten character witnesses who testified to Kelly's peaceful disposition. At the conclusion of trial, Robey requested jury instructions only on felonious assault, felony murder, purposeful murder, and assault, effectively forcing jurors to choose between convicting Kelly of one of several serious offenses or acquitting him entirely. The jury elected the former, finding Kelly guilty of felonious assault, felony murder, and assault. The judge imposed a sentence of fifteen years to life imprisonment for the felonious assault and felony murder convictions, with a concurrent six-month sentence for the assault.

Barker was tried separately and convicted of felonious assault, felony murder, purposeful murder, and one count of tampering with evidence. He received a life sentence with parole eligibility after fifteen years for the murder of Kernich, with a concurrent five-year sentence for tampering with the evidence. Unlike in Kelly's trial, however, Barker's attorney requested (but was denied) a jury instruction on lesser included offenses. Both Barker and Kelly would go on to appeal their criminal convictions.

B

On direct appeal, Kelly argued, *inter alia,* that he had received ineffective assistance of trial counsel when Robey failed to: (1) clarify that a mixed DNA sample found on Kelly's pants

---

[3]No fewer than ten eyewitnesses contradicted Kelly's account. One testified that he saw Kelly kick Kernich "multiple times." Another testified that Kelly kicked Kernich "at least . . . three times." The consensus of the eyewitness testimony was that Kelly had kicked Kernich between two and three times while he lay on the ground. Conversely, Kelly could offer no testimony other than his own to suggest that he had not touched Kernich.

did not necessarily contain the blood of Kernich; (2) advance and obtain further evidence in support of a theory that Barker's running punch, and not any subsequent kicks to Kernich's body, was the cause of Kernich's death; and (3) object to allegedly pervasive prosecutorial misconduct. Kelly's counsel on direct appeal was Margaret Robey, wife of trial counsel Gregory Robey and co-partner in their shared firm Robey & Robey. As if that alone did not present significant issues of legal conflict (not to mention marital strife), the record reflects that Gregory, and not his wife Margaret, actually appeared before the Ohio Court of Appeals intent on arguing *his own incompetence*. *Kelly*, 2012 WL 439668 at *12 ("Attorney Greg Robey was appellant's counsel both at trial and during oral arguments."). The Ohio Court of Appeals, finding "counsel's inherent conflict of interest . . . obvious" with respect to Kelly's ineffective-assistance-of-trial-counsel claim, refused to adjudicate the issue on direct appeal, instead concluding that it should have been raised "in a postconviction relief proceeding pursuant to [Ohio Rev. Code §] 2953.23." *Ibid*. Notably, on the same day that the Ohio Court of Appeals denied Kelly's appeal, it overturned Barker's conviction on the ground that the trial court erred when it rejected Barker's request for a lesser-included-offenses jury instruction. *State v. Barker*, 2012 WL 439658 (Ohio Ct. App. Feb. 13, 2012).

Kelly, still represented by Gregory and Margaret Robey, sought *en banc* review of the Ohio Court of Appeals decision. In that proceeding, Kelly reiterated his ineffective-assistance-of-trial-counsel claim on the same grounds as before. Perhaps inspired by the success of Barker, however, Kelly also argued for the first time that the trial court erred when it failed to give Kelly a similar lesser-included-offenses jury instruction. Kelly's argument differed from Barker's, though, in that unlike Barker, Kelly's counsel had failed to request a lesser-included-offenses jury instruction at trial. Thus, his claim was that the failure of the trial court to give the instruction constituted plain error. The Ohio Court of Appeals denied Kelly's application for *en banc* review, concluding that a plain-error analysis was not warranted where the appellant "does not assign or argue the error on appeal," and that it was still precluded from considering Kelly's ineffective-assistance-of-trial-counsel claim because of his appellate counsel's inherent conflict. Finally taking the hint, Kelly dismissed his conflicted counsel and sought representation from the Ohio Public Defender's office. Armed with newly appointed counsel, Kelly took his direct

appeal to the Ohio Supreme Court.  The court declined to hear his case.  *State v. Kelly*, 974 N.E. 2d 113 (Ohio 2012).

While Kelly's direct appeal was still pending before the Ohio Court of Appeals, and while he was still represented by Gregory and Margaret Robey, Kelly sought post-conviction relief pursuant to Ohio Rev. Code § 2953.21.  In his state post-conviction motion, Kelly advanced only two arguments: (1) that he was denied a fair trial due to unfair media coverage and an all-white jury venire, and (2) that the jurors had been subjected to "coercive pressure" to render a verdict when the trial judge forced them to deliberate over the weekend.  The Ohio trial court rejected Kelly's post-conviction motion without a hearing on September 6, 2012, just one day after the Ohio Supreme Court declined to hear his case on direct appeal.  Kelly, by this time represented by an Ohio public defender, chose not to appeal the decision.

Kelly's appointed counsel did, however, file a motion in the Ohio Court of Appeals pursuant to Ohio App. R. 26(B) to reopen that court's decision regarding Kelly's direct appeal. Rule 26(B) permits a court to reopen a criminal judgment "based on a claim of ineffective assistance of appellate counsel."  Ohio App. R. 26(B)(1).  Kelly argued that the conflict of interest between his trial and appellate counsel prevented him from raising various claims on appeal, including the claim that his trial counsel was ineffective for failing to request a lesser-included-offenses jury instruction.  This was the *first* time that Kelly raised his jury-instruction argument in the context of an ineffective-assistance-of-trial-counsel claim, having previously raised the argument as an independent claim of plain error in his petition for *en banc* review before the Ohio Court of Appeals.  The Court of Appeals denied Kelly's motion, applying the Supreme Court's test for ineffective counsel in *Strickland v. Washington*, 466 U.S. 668 (1984), and concluding that Kelly's appellate counsel was not ineffective.  The court reasoned that because Kelly's trial counsel was reasonable, in that the decision to pursue an all-or-nothing defense was "within the purview of trial strategy" and that such a defense did not mandate an instruction of "lesser-included offenses given the nature of the evidence," Kelly would not have succeeded on direct appeal even if his appellate counsel *had* properly raised the ineffective-assistance-of-trial-counsel claim.  As Kelly was not prejudiced by his appellate counsel's failure to raise a meritless claim, the court went on to conclude, he could not successfully make out a

claim for ineffective assistance of appellate counsel and thus his direct appeal did not merit reopening.  Kelly appealed this decision to the Ohio Supreme Court, but, just as on direct appeal, the Ohio Supreme Court declined review.  *State v. Kelly*, 988 N.E. 2d 579 (Ohio 2013).

C

With no further avenue of relief available in Ohio state court, Kelly filed a petition in federal district court for habeas relief under 28 U.S.C. § 2254.  Although he originally advanced four claims, he subsequently filed a traverse that narrowed his four claims to two: (1) that his trial counsel was constitutionally ineffective for pursuing an unreasonable "all-or-nothing" trial strategy, including trial counsel's failure to request a lesser-included-offenses jury instruction; and (2) that his appellate counsel were also constitutionally ineffective because their conflict of interest prevented them from properly raising his ineffective-assistance-of-trial-counsel claim on direct appeal.  *Kelly v. Lazaroff*, 2015 WL 4546996, at *6 (N.D. Ohio July 28, 2015).  The district court denied both claims.

With respect to Kelly's ineffective-assistance-of-trial-counsel claim, the district court concluded that Kelly had failed to exhaust his available state remedies, as required by 28 U.S.C. § 2254(b) and (c), because he had not properly raised the claim on direct appeal.[4]  The claim was thus procedurally defaulted.  The district court then went on to reject Kelly's argument, based on the Supreme Court's holdings in *Martinez* and *Trevino*, that his procedural default could be excused because of his appellate counsel's ineffectiveness, reasoning that his ineffective-assistance-of-trial-counsel claim was meritless and that his appellate counsel could not be ineffective for failing to raise a meritless claim.  *Kelly*, 2015 WL 4546996, at *8.  In this regard, the district court's analysis closely mirrored the analysis of the Ohio Court of Appeals, which rejected Kelly's Rule 26(B) application for the same reason.

With respect to Kelly's ineffective-assistance-of-appellate-counsel claim, the district court noted that the claim *had* been resolved on the merits by the Ohio Court of Appeals when it

---

[4]Kelly *had* argued that his trial counsel was constitutionally ineffective on direct appeal, but for reasons unrelated to his failure to request a lesser-included-offenses jury instruction.  Although he did raise the argument as a reason why his *appellate* counsel was ineffective in his Rule 26(B) application before the Ohio Court of Appeals, the district court concluded that raising the claim in that context was "not sufficient to 'fairly present' the claim itself to the state courts." *Kelly*, 2015 WL 4546996, at *7 (citing *Wagner v. Smith*, 581 F.3d 410, 417-18 (6th Cir. 2009)).

denied Kelly's Rule 26(B) application.  *Id.* at \*11.  Thus, as the district court explained, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") required it to give deference to the decision of the Ohio court, granting habeas relief only where the "state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts."  *Id.* at \*9.  Because the legal claim at issue was an ineffective-assistance-of-appellate-counsel claim, which requires courts to grant deference to the reasoned choices of appellate counsel, AEDPA in this context required a "doubly deferential" standard of review.  *Id.* at \*10 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013)).  As Kelly's claim could not overcome this highly deferential standard, the district court rejected it as well.

Kelly re-raises both claims in this timely appeal.

II

Kelly's first habeas claim is that his trial counsel provided constitutionally ineffective assistance.  We review a federal district court's habeas corpus decisions under a mixed standard of review, "examin[ing] the district court's legal conclusions *de novo* and its factual findings under a 'clearly erroneous' standard."  *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003) (quoting *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999)).  As the facts are uncontested, this is strictly an evaluation of the district court's legal conclusions, and is thus entirely subject to *de novo* review.

A

As a state habeas petitioner, Kelly must satisfy the requirements of 28 U.S.C. § 2254, which commands that "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  This exhaustion requirement "serves important federalism interests by permitting state courts the first opportunity to correct alleged violations of their prisoner's rights," *King v. Berghuis*, 744 F.3d 961, 964 (6th Cir. 2014) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)), and is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  As "[t]his requirement . . . refers only to remedies still

available at the time of the federal petition," *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)), it can be satisfied where, as is alleged here, the habeas petitioner's claims are procedurally defaulted. "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Id.* at 162.

Determining whether a habeas petitioner's claim has been procedurally defaulted is a four-step inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule . . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim . . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

A brief review of Kelly's case history in Ohio state court reveals that, with respect to his ineffective-assistance-of-trial-counsel claim, he did not fully exhaust his claim on the merits and is now procedurally barred from doing so. As previously discussed, Kelly raised several arguments as to why his trial counsel was ineffective in his direct appeal, but none of them involved the specific claim that he raises here: that his trial counsel was ineffective for failing to request a lesser-included-offenses jury instruction. *See supra* Part I.B. Kelly did make such an argument in his Rule 26(B) application, in the context of arguing that his *appellate* counsel was sufficiently ineffective to merit reopening his direct appeal. However, as our precedent makes clear, "the doctrine of exhaustion requires that the same claim *under the same theory* be presented to the state courts before raising it in a federal habeas petition." *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009) (emphasis added). Simply presenting the claim clothed in an

analogous theory of relief will not do.  Even if we were to accept Kelly's argument on appeal that the presentation of the claim in this context could satisfy the habeas exhaustion requirements, his ineffective-assistance-of-trial-counsel claim is nonetheless meritless.  *See infra* Part II.B.

Nor is there an opportunity for Kelly to return to Ohio state court and raise his claim in a state post-conviction proceeding, as the Ohio Court of Appeals on direct appeal suggested that he do.  Kelly filed a claim for state post-conviction relief under Ohio Rev. Code § 2953.21, but failed to argue that his trial counsel was constitutionally ineffective.  That decision was never appealed.  *See supra* Part I.B.  Although Ohio does permit the filing of second or successive state post-conviction petitions, Kelly cannot meet either of Ohio's strict statutory requirements for doing so.[5]

As Kelly did not raise his ineffective-assistance-of-trial-counsel claim on the merits at any point during his appeals and cannot do so now, his claim must be considered procedurally defaulted.  Thus, the only way this court can review his claim in a habeas corpus petition is if Kelly demonstrates cause and prejudice.  *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  Kelly argues that the ineffectiveness of his appellate counsel can meet this standard and excuse his procedural default.  *See* Appellant's Br. at 27–29.  The Supreme Court has made clear that attorney error can excuse a petitioner's procedural default, but only where attorney error amounts to ineffective effective assistance of counsel.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").  Thus, the question of whether the actions of Kelly's appellate counsel can excuse the procedural default of his ineffective-assistance-of-trial counsel claim depends on whether Kelly's appellate counsel fell below the standard for constitutionally effective counsel announced in *Strickland v. Washington*, 466 U.S. 668 (1984).

---

[5]Ohio law requires that a successive petitioner show that he was "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" and that the error would have changed the outcome at trial, or that DNA testing can establish actual innocence of the alleged offense.  Ohio Rev. Code 2953.23.  Kelly does not argue that his ineffective-assistance-of-trial counsel claim meets either requirement.

*Strickland* says that in order to succeed in an ineffective-assistance-of-counsel claim, a petitioner must show that counsel acted "outside the wide range of professionally competent assistance" such that the petitioner was prejudiced. 466 U.S. at 690. The district court assumed, and neither party seems to contest, that appellate counsel's continued representation of Kelly through the appeals process, *despite* continued warnings that their conflict of interest with trial counsel prohibited them from raising non-frivolous ineffective-assistance-of-trial-counsel claims on appeal, fell below the standard of professionally competent assistance. Nonetheless, the district court concluded that Kelly still failed to pass the *Strickland* test because he could not demonstrate prejudice, reasoning that his ineffective-assistance-of-trial-counsel claim was ultimately meritless, and that Kelly was not prejudiced by his appellate counsel's failure to raise a meritless claim. Oddly, then, whether Kelly can present his ineffective-assistance-of-trial-counsel claim to this court on the merits depends entirely on whether or not that very ineffective-assistance-of-trial-counsel claim has any merit.

B

The merits of Kelly's ineffective-assistance-of-trial-counsel claim are also governed by *Strickland*, meaning that Kelly needs to show both that his trial counsel acted "outside the wide range of professionally competent assistance" and that he was prejudiced. *Ibid.* This is an extremely deferential standard, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ibid.* In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Ibid.* Moreover, this inquiry requires eliminating "the distorting effects of hindsight . . . [in order] to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Stated more succinctly, the goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id.* at 687.

Kelly argues that his trial counsel's decision to pursue an "all-or-nothing" defense falls below the level of professionally competent assistance.[6] Specifically, he argues that the wealth of eyewitness testimony that contradicted Kelly and undermined his account of events should have led trial counsel to pursue a strategy of mitigation. Under this approach, trial counsel should have emphasized that it was Barker, and not Kelly, who struck the most vicious blow, and that while Kelly was involved in the altercation, one of several lesser included offenses was a more appropriate punishment for his limited involvement. Several of these offenses, Kelly emphasizes on appeal, carry sentences over ten years shorter than the fifteen-year minimum term of imprisonment that Kelly is currently serving. *See* Appellant's Br. at 18.

Although this approach might well have turned out to be more beneficial to Kelly, we are not persuaded that trial counsel's chosen strategy was objectively unreasonable. Kelly himself testified extensively at trial as to his version of events, repeatedly insisting that he had no contact with the victim. In support of this theory, Kelly also testified to Barker's violent nature, recalling a specific episode from the very night of Kernich's death where Barker brawled with another student at a fraternity party. Trial counsel also introduced DNA evidence at trial demonstrating that the blood on Kelly's sneakers belonged not to Kernich but to Bradley Chelko, corroborating Kelly's account that he was too preoccupied scuffling with other students to participate in the assault on Kernich. Although other eyewitness testimony controverted Kelly's description of events, it was at least conceivable that the hectic nature of the assault combined with poor nighttime visibility could convince jurors to favor Kelly's account over those of his accusers. Moreover, had trial counsel's strategy been successful, Kelly would have been completely acquitted of the criminal charges he faced for the attack on Kernich.

Trial counsel certainly pursued a "high risk, high reward" approach to Kelly's representation. That approach had significant risks, including the possibility that Kelly would

---

[6]It should be noted that the appellee disputes the scope of Kelly's argument on appeal, asserting that Kelly improperly "mutated" the claim he advanced in state court, where he objected to counsel's simple failure to request a jury instruction, to the claim he advances today, where he objects to counsel's entire trial strategy. *See* Appellee's Br. at 13–19. Kelly disputes this characterization, instead arguing that the two go hand-in-hand. Reply Br. at 1–3. Although the merits of appellee's distinction are unclear, we need not reach the issue here. Kelly adequately raised the argument in his habeas petition before the district court, and the more forceful reading of Kelly's argument does not alter the outcome.

ultimately be convicted and face a lengthy prison sentence. But it also carried potential reward, including the possibility that Kelly could avoid imprisonment entirely. It cannot be the case that every risky trial strategy, upon failing, amounts to constitutionally ineffective counsel. Because there was sufficient evidence in the record to support trial counsel's decision to pursue an "all-or-nothing" defense, trial counsel's performance did not fall below the bar of professionally competent assistance. Thus, Kelly's ineffective-assistance-of-trial-counsel claim is meritless. As his appellate counsel cannot be considered ineffective for failing to raise a meritless claim, Kelly cannot excuse his procedural default and we hold that his claim is procedurally barred.

III

Kelly also raises an ineffective-assistance-of-counsel claim for his *appellate* counsel's performance in this habeas petition. Just as with his ineffective-assistance-of-trial-counsel claim, we review the district court's legal conclusions *de novo* and its factual findings under a "clearly erroneous" standard. *Caver*, 349 F.3d at 345.

A

Unlike his ineffective-assistance-of-trial-counsel claim, however, Kelly's ineffective-assistance-of-appellate-counsel claim *was* properly presented before the Ohio state courts in his Rule 26(B) application to reopen his direct appeal. *See supra* Part I.B. As such, Kelly's habeas claim is subject to the heightened standard of review required by AEDPA, 28 U.S.C. § 2254. This statute provides that a habeas corpus petition filed by a state prisoner shall be denied with respect to any claim that was "adjudicated on the merits in State court" unless the petitioner can demonstrate that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or involved an "unreasonable determination of the facts." *Id.* As neither party disputes the state court's adjudication of the facts, AEDPA's relevance to this case is limited to its command of deference to the state court's legal reasoning.

Nonetheless, AEDPA sets the burden of proof extremely high for the prospective habeas petitioner. A state-court decision is contrary to clearly established federal law only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme

Court] and nevertheless arrives at a result different from [Supreme Court precedent]." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Similarly, a state-court decision unreasonably applies federal law when it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case," or if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Simply misapplying the law is not enough. "[T]he state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21 (quoting *Williams*, 529 U.S. at 409).

AEDPA deference is made more deferential still where the underlying substantive law requires this court to defer to another reasoned decision-maker on review. As previously discussed, *see supra* Part II, an ineffective-assistance-of-counsel claim is governed by the test articulated in *Strickland*, where "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. By itself, this is a deferential standard that is challenging for a claimant to meet. Where the claimant is a state habeas petitioner whose claims are subject to AEDPA, that standard is raised even higher, as the petitioner must show that the state court's application of *Strickland* was itself unreasonable. This amounts to a "doubly deferential standard of review that gives both the state court *and* the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (internal quotation omitted) (emphasis added). Stated differently, AEDPA requires us to "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotations omitted).

Kelly's ineffective-assistance-of-appellate-counsel claim argues that his appellate counsel was deficient for failing to raise his ineffective-assistance-of-trial-counsel claim on appeal in Ohio state court. This claim involves essentially the same analysis that we performed with respect to Kelly's argument that the procedural default of his ineffective-assistance-of-trial-counsel claim could be excused. S*ee supra* Part II. As Kelly fails to demonstrate on *de novo*

review that his counsel violated the deferential *Strickland* standard, we hold that he also fails under the "doubly deferential" standard prescribed by AEDPA in combination with *Strickland*.

IV

Kelly's case is a complex one, rendered all the more complicated by the poor performance of his counsel on direct appeal before the Ohio state court. Kelly's claims nonetheless fail because he cannot overcome the deference we afford to strategic decisions made by counsel when we evaluate them on appellate review. For this reason, we AFFIRM the decision of the district court and DENY Kelly's petition for habeas corpus.