*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID A. MAPES,

        *Petitioner-Appellee/*
        *Cross-Appellant,*

Nos. 01-3828/3891

    *v.*

ARTHUR TATE, Warden,

        *Respondent-Appellant/*
        *Cross-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 91-00056—Solomon Oliver, Jr., District Judge.

Argued: June 15, 2004

Decided and Filed: November 3, 2004

Before: RYAN, SILER, and DAUGHTREY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Stephen E. Maher, ATTORNEY GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellant. Harry R. Reinhart, Columbus, Ohio, for Appellee. **ON BRIEF:** Stephen E. Maher, ATTORNEY GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellant. Harry R. Reinhart, Columbus, Ohio, Carol Wright, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

    RYAN, Circuit Judge. The state of Ohio, through Warden Arthur Tate, appeals from the district court's order granting David A. Mapes a conditional writ of *habeas corpus* unless the Ohio courts review his sentence within 90 days. For the following reasons, we **AFFIRM**.

### I.

    The facts of this case are fully reported in our previous decision in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999) (*Mapes I*), and are only briefly recounted here. Mapes was convicted of aggravated murder in the shooting death of John Allen during a robbery at Allen's bar in Cleveland, Ohio. Because Mapes had previously been convicted of a murder in New Jersey, the Ohio murder conviction made him eligible for

the death penalty. At the sentencing phase of Mapes's trial, the jury heard evidence regarding seven statutory aggravating and mitigating factors. The only mitigating evidence Mapes submitted was an unsworn statement that he was only 18 years old at the time of the New Jersey murder, that the conviction was really for manslaughter in light of the sentence he received, and that he was not responsible for the actual shooting.

To prepare the jury for its sentencing deliberations, the trial court gave several instructions, only two of which are in issue. First, the court instructed the jurors that they could not consider giving Mapes a life sentence unless they first unanimously rejected the death penalty. *Id.* at 416. Second, the jurors were told that they were not permitted to consider mitigating evidence related to Mapes's prior murder conviction. *Id.* at 417. Mapes's counsel objected to both of these instructions.

The jury recommended that Mapes be sentenced to death. After the jury announced its verdict, the trial judge polled each of the jurors, asking them, "[I]s this your verdict[?]" *Id.* at 423. Juror June Chatman responded by saying, "It's to me, it's the State's verdict." *Id.* Inquiring further, the trial judge asked whether Chatman had signed the verdict form. She answered, "Yes, I did." *Id.* The trial court stated that Chatman's answer was sufficient. Mapes's counsel objected to this holding and requested that the jury be allowed to continue its deliberations. The trial judge refused this request.

Mapes filed a direct appeal in the Ohio Court of Appeals. His counsel brought 12 assignments of error, 11 of which pertained to the guilt phase of the trial. *Id.* at 412. In his only sentencing argument, Mapes alleged that, by commenting on the fact that his mitigation statement was unsworn, the prosecutor had infringed on Mapes's Fifth Amendment right to remain silent. Appellate counsel did not raise, in the state appellate court, any of the three sentencing issues that are currently the subject of Mapes's *habeas corpus* petition. Mapes's conviction and death sentence were affirmed on direct appeal, *State v. Mapes*, 484 N.E.2d 140 (Ohio 1985), and his petition for state post-conviction relief was denied, *State v. Mapes*, 558 N.E.2d 57 (Ohio 1990).

Mapes filed a *habeas corpus* petition in federal district court alleging 15 assignments of constitutional error. The only claim credited by the district court was that Mapes had received ineffective assistance of appellate counsel by virtue of counsel's failure to argue on direct appeal that the trial court had impermissibly precluded the jury from considering mitigating factors related to Mapes's New Jersey murder conviction. The district court agreed and granted Mapes's petition, vacating his death sentence unless Ohio courts provided another review within 90 days. Ohio timely appealed the district court's order.

A divided panel of this court reversed in part and remanded to the district court for an evidentiary hearing to determine whether Mapes's appellate counsel was ineffective for failing to raise the following four issues: (1) that the jury was not allowed to consider mitigating evidence relating to Mapes's prior murder conviction, hereinafter referred to as the *Eddings* claim; (2) that the jury was erroneously required to unanimously reject the death penalty before considering a life sentence, hereinafter referred to as the acquittal-first claim; (3) that juror Chatman gave an equivocal response during polling, hereinafter referred to as the unanimity claim; and (4) that trial counsel had been constitutionally ineffective. *Mapes I*, 171 F.3d at 427, 429.

On remand, the case was referred to a magistrate judge who conducted an evidentiary hearing and concluded that Mapes's appellate counsel was ineffective for failing to raise (1) the *Eddings* claim, (2) the acquittal-first claim, and (3) the unanimity claim. By agreement of the parties, the magistrate judge reserved judgment on the fourth issue, the claim of ineffective assistance of trial counsel. The district court adopted the magistrate judge's recommendation and granted Mapes's petition for a writ of *habeas corpus*, vacating his sentence of death unless the Ohio courts granted another review of Mapes's sentence within 90 days. Ohio appeals the district court's order and Mapes cross-appeals, claiming that, rather than a new appeal, the proper remedy is to vacate his death sentence.

## II.

Because a claim of ineffective assistance of counsel raises mixed questions of law and fact, we review the district court's ruling on such a claim *de novo*. *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999). "Any findings of fact pertinent to the ineffective assistance of counsel inquiry are subject to a 'clearly erroneous' standard of review." *Id.*

## III.

Mapes argues that he did not receive the effective assistance of appellate counsel because his appellate counsel failed to raise the following three issues on appeal: (1) the *Eddings* claim; (2) the acquittal-first claim; and (3) the unanimity claim. A fourth issue—ineffective assistance of trial counsel—was reserved by agreement of the parties. Mapes maintains that the district court correctly found (1) that these issues were significant and obvious and (2) that appellate counsel did not have a strategy in omitting these issues from his direct appeal.

Ohio claims that the issues omitted by Mapes's appellate counsel were not significant and obvious because jurists, attorneys, and even Mapes's own expert disagreed about whether the claims were viable. Ohio also points out that Mapes bears the burden of establishing ineffective assistance of counsel and that the district court impermissibly shifted this burden to the state by holding that appellate counsel's failure to recall an appellate strategy was evidence of deficient performance. Ohio argues that the failure to recall an appellate strategy does not overcome the presumption that appellate counsel performed satisfactorily.

A defendant is entitled to the effective assistance of counsel in his first appeal of right. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). Appellate counsel's performance is judged under the same standard for evaluating trial counsel's performance found in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Jago*, 888 F.2d 399, 405 n.1 (6th Cir. 1989); *see also Bowen v. Foltz*, 763 F.2d 191, 194 n.3 (6th Cir. 1985). To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient *and* that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland*, 466 U.S. at 687. The scrutiny of counsel's performance is highly deferential and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Nevertheless, a reviewing court must ensure that counsel acted reasonably under all the circumstances. *Id.* at 688.

We consider the following factors in determining whether an attorney on direct appeal performed reasonably competently:

(1)     Were the omitted issues "significant and obvious"?
(2)     Was there arguably contrary authority on the omitted issues?
(3)     Were the omitted issues clearly stronger than those presented?
(4)     Were the omitted issues objected to at trial?
(5)     Were the trial court's rulings subject to deference on appeal?
(6)     Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
(7)     What was appellate counsel's level of experience and expertise?
(8)     Did the petitioner and appellate counsel meet and go over possible issues?
(9)     Is there evidence that counsel reviewed all the facts?
(10)    Were the omitted issues dealt with in other assignments of error?
(11)    Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes I*, 171 F.3d at 427-28 (citing cases). The foregoing list is not exhaustive and is not intended to "produce a correct 'score.'" *Id.* at 428.

## A.

At his trial, Mapes was charged with a death-penalty "specification" alleging that he had previously been convicted of an offense, an essential element of which was the purposeful killing of another. The trial judge found Mapes guilty of the specification based on a New Jersey murder conviction from 1972. When Mapes attempted to introduce mitigating evidence that he was not the triggerman in the New Jersey murder, the trial judge instructed the jury that it was not allowed to consider any mitigating evidence related to the prior murder conviction. This instruction was contrary to the Supreme Court's ruling in *Eddings v. Oklahoma*, 455 U.S. 104 (1982):

> "[T]he Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."

*Id.* at 110 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)). We must decide whether the failure to raise this claim in Mapes's appeal constituted ineffective assistance of counsel.

Ohio argues that the *Eddings* claim was not significant and obvious. We disagree. First, the claim was significant because the trial court's erroneous instruction prevented the jury from considering mitigating evidence and was, therefore, reversible error. Moreover, because *Eddings*, which announced a new constitutional law principle that affected state court sentencing in capital cases, was decided a year before Mapes's trial, the issue should have been obvious to Mapes's appellate counsel.

Ohio's only other argument regarding the ineffective assistance of appellate counsel claim is that the district court impermissibly shifted the burden of proof to the state. Ohio correctly maintains that a petitioner who alleges the ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). Given that Mapes's appellate attorneys could not recall why they failed to raise the *Eddings* claim, Ohio argues that Mapes has failed to overcome this presumption.

There are other factors, however, that indicate that appellate counsel were deficient. First, as we have stated, the *Eddings* claim was significant and obvious. Second, the omitted issue was clearly stronger than those presented. All but one of the 12 assignments of error brought by appellate counsel pertained to the guilt phase despite the overwhelming evidence of Mapes's guilt. Moreover, three of these errors were asserted in the face of established law to the contrary. *See State v. Mapes*, No. 47191, 1984 WL 5285, at *10-11, 15, 16-17 (Ohio Ct. App. Oct. 25, 1984). Clearly, this was not a case in which appellate counsel omitted a questionable claim on appeal in order to concentrate on more meritorious claims; in fact, the opposite appears to be true. Third, trial counsel did object to the erroneous instruction at trial, thereby putting appellate counsel on notice of a possible error and preserving the error for appellate review. Fourth, the trial court's instruction was an error of law subject to *de novo* review, thus precluding any question that the issue might have been omitted from the appeal due to concern about a deferential standard of review on appeal. Fifth, neither of Mapes's appellate attorneys had any experience with death penalty appeals, although they did confer with a death penalty expert from the University of Akron School of Law. Sixth, the omitted issue was not dealt with in any other assignment of error on direct appeal. Finally, the failure to raise the *Eddings* claim, which even now is unexplained, was not reasonable. The trial judge's instruction precluding the consideration of mitigating evidence concerning the New Jersey murder was directly contrary to a recent Supreme Court decision. Mapes's appellate attorneys gained no advantage from not raising the issue on direct appeal and are unable, even now, to explain why they did not raise it. No competent attorney, in the circumstances of this case, would have failed to raise this issue.

Thus, even if the district court erroneously concluded that appellate counsel's lapse of memory at the evidentiary hearing was evidence of a lack of strategy, the balance of the evidence supports the

conclusion that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the appeal unfair and the result unreliable. *Strickland*, 466 U.S. at 687. For this reason, we affirm the district court's finding that Mapes did not receive the effective assistance of appellate counsel.

**B.**

Although we suggested in *Mapes I* that there may have been other grounds to support the issuance of the writ, our decision regarding the *Eddings* claim is sufficient to affirm the district court's holding that Mapes was denied the effective assistance of appellate counsel. Consequently, we express no opinion about the acquittal-first claim, the unanimity claim, or the ineffective assistance of trial counsel. We caution that our opinion in *Mapes I* addressed only whether Mapes was entitled to an evidentiary hearing, and it should not be read as expressing an opinion as to the merits of Mapes's claims.

**IV.**

Having concluded that Mapes did not receive the effective assistance of appellate counsel, we turn to the proper remedy. Mapes argues that the district court erred in conditioning the issuance of the writ upon the provision of a new, direct appeal. He argues that the appropriate remedy was to vacate his sentence of death and instruct the Ohio courts to resentence him.

Mapes assumes that the grant of a writ of *habeas corpus* in this case, based on a Sixth Amendment violation, also established that there was an *Eighth* Amendment violation at sentencing. It is well settled, of course, that the Sixth and Eighth Amendments are applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148 (1968) (collecting cases); *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). For the sake of clarity, we refer to the Amendments directly, as opposed to their indirect application by virtue of the Fourteenth Amendment. Mapes claims that the existence of this Eighth Amendment violation at sentencing, the *Eddings* claim, is now the law of the case, and he argues that "[i]f the state appellate court were to deny relief, Petitioner would nevertheless be entitled to federal habeas relief." He appears to base these assumptions on two factors: (1) as a prerequisite to habeas relief, Mapes was "required [to] pro[ve] that the omitted issues would have prevailed had they been raised," which, as we explain below, is a misstatement of law, and (2) a federal Eighth Amendment claim (the *Eddings* claim), defaulted by ineffective assistance of appellate counsel, was "clearly meritorious." Mapes argues that as it is clear there was a violation of his federal Eighth Amendment rights *at trial*, "it is inappropriate for a federal court to delegate or defer its enforcement responsibility to a state appellate court." Mapes suggests that if his Sixth Amendment claim had been predicated on a matter of state law only, "a new direct appeal in state court might be an appropriate remedy," but since his Sixth Amendment claim was based on federal rights, a new, direct appeal is inappropriate.

Again, operating from the assumption that an Eighth Amendment violation at trial is the law of the case, Mapes argues that a direct appeal in state court "would serve no useful purpose." He points to the fact that under Ohio law, once it has been established that there was a jury instruction error at the penalty phase of a capital case, a court can only resentence a defendant to life imprisonment. Mapes concludes that "[i]f the Writ is to be conditioned at all, it should rest upon the condition of a new sentencing hearing."

As an initial matter, it is important to have a clear understanding of the issue that is before this court, as well as an understanding of the issues that are *not* before us. This case presents a very narrow question: whether Mapes was deprived of effective assistance of appellate counsel in violation of the Sixth Amendment. Contrary to Mapes's contention, determination of this issue does not require us to *decide* the underlying issue whether Mapes's Eighth Amendment rights were violated *at sentencing*. As we stated repeatedly in *Mapes I*, Mapes's underlying claims were not raised on direct appeal and are thus barred by procedural default, an adequate and independent ground for affirming his sentence. *Mapes I*, 171 F.3d at 419, 424, 427. We further pointed out in *Mapes I* that these underlying claims are "relevant only insofar

as [they] bear[] on the question whether appellate counsel was unconstitutionally ineffective in failing to raise [them]." *Id.* at 427.

In order to establish a Sixth Amendment violation, it must be shown both that counsel's representation fell below an objective standard of reasonableness, and that his deficiencies prejudiced the defendant. *See Strickland*, 466 U.S. at 687-88. With respect to prejudice in the context of ineffective assistance of appellate counsel, a defendant must show a reasonable probability that, but for his counsel's defective performance, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Although this analysis necessarily involves an evaluation of the underlying claims, it does *not* require a decision on or a determination of these issues. All that is required is a determination that, based on the nature of the underlying claims, there is "a reasonable probability that, but for his counsel's [failings] . . . , [the defendant] would have prevailed on his appeal." *Id.*; *see also McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

With this firmly in mind, it is clear that Mapes is mistaken when he argues that the existence of an Eighth Amendment violation is the law of the case, binding the Ohio courts and forcing this court to shape its remedy accordingly. The only *holding* of the district court is that "Mapes did not receive the effective assistance of appellate counsel." This is a simple Sixth Amendment violation, and the law is clear that "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). Thus, as the only constitutional violation properly before us is the ineffective assistance of *appellate* counsel, the appropriate remedy is the one granted by the district court, that is, a writ conditioned upon Ohio courts granting a new, direct appeal. This remedy avoids unnecessarily interfering with Ohio's interest in correcting its own errors. Although the death penalty understandably evokes strong passions and emotions, the prevailing interests of federalism and comity demand that federal courts exercise restraint when issuing a writ of *habeas corpus*.

The remedy Mapes requests goes far beyond "neutraliz[ing]" the constitutional deprivation suffered by the defendant and would, therefore, contravene the rule announced in *Magana v. Hofbauer*, 263 F.3d 542, 553 (6th Cir. 2001). Although Mapes may have suffered violations of other federal rights *at sentencing*, those issues are not properly before us. Accordingly, the appropriate remedy is the granting of the writ conditioned upon Ohio courts granting Mapes an opportunity to pursue his direct appeal with effective assistance of counsel. Such a narrow remedy "neutralize[s]" the constitutional violation and is supported by our case law. *See Freels v. Hills*, 843 F.2d 958, 964 (6th Cir. 1988); *see also Moore v. Rose*, No. 93-5508, 1994 WL 102958, at *5 (6th Cir. Mar. 25, 1994) (unpublished disposition).

Although there may be some appeal to Mapes's argument that this court should avoid unnecessary proceedings by deciding the merits of his underlying claims, he has offered no authority suggesting the propriety of our engaging in such an innovation. Mapes argues that "[i]f the state appellate court were to deny relief, Petitioner would nevertheless be entitled to federal habeas relief." While Mapes may be correct that he would be entitled to federal *habeas* relief if Ohio denies relief, that issue is not properly before this court. Until Mapes presents his underlying claims in a direct appeal before Ohio courts, these claims are procedurally barred. Furthermore, we express no opinion about whether Ohio law permits courts to impose only a life sentence upon a finding of error at sentencing in a capital case, as the issue is not presently before us.

## V.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.